Daniel J. Brown, #307604
Ethan C. Surls #327605
**STANSBURY BROWN LAW, PC**
2610 ½ Abbot Kinney Blvd.
Venice, CA 90291
Telephone: (323) 204-3124
Email: dbrown@stansburybrownlaw.com

Attorneys for Plaintiff and Cross-Defendant Filemon Colores

UNITES STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| FILEMON COLORES, as an individual and on behalf all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>RAY MOLES FARMS, INC., a California Corporation; and DOES 1 through 100,<br><br>Defendants. | Case No. 1:21-cv-00101-JLT-BAM (Consolidated with 1:21-cv-00467-NONE-SAB)<br><br>**PLAINTIFF/CROSS-DEFENDANT FILEMON COLORES' SUPPLEMENTAL BRIEF RE: RECENT AUTHORITY IN SUPPORT OF HIS OPPOSITION TO DEFENDANT/CROSS-COMPLAINANT RAY MOLES FARMS, INC.'S PETITION TO COMPEL ARBITRATION** |
| RAY MOLES FARMS, INC., a California Corporation<br><br>Cross-Complainant,<br><br>vs.<br><br>FILEMON COLORES, as an individual and on behalf all others similarly situated,<br><br>Cross-Defendants. | Date:   TAKEN UNDER SUBMISSION<br>Dept.:   4<br>Time:<br><br>Complaint Filed: November 23, 2020<br>Date of Removal: January 25, 2021<br>Cross-Complaint Filed: May 14, 2021<br>Trial Date: Not Yet Set |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. RECENT AUTHORITY FURTHER SUPPORTS A FINDING THAT DEFENDANT HAS WAIVED ITS RIGHT TO ARBITRATION

The U.S. Supreme Court's recent decision in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022) confirms Defendant Ray Moles Farms, Inc. ("Defendant") waived its alleged right to compel arbitration of Plaintiff Filemon Colores' ("Plaintiff's) claims.

On May 23, 2022, the Supreme Court, in *Morgan*, issued a unanimous 9-0 Opinion stating that in considering whether an employer-defendant has waived its right to compel arbitration, **courts need not consider whether a party is prejudiced by the purported waiver** of the right to compel arbitration by way of litigation conduct. *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022).

As explained in *Morgan*, "[w]aiver is the intentional relinquishment or abandonment of a known right," and, in order "[t]o decide whether a waiver has occurred, [a] court [should] focus[] on the actions of the person who held the right," *not* on "the effects of those actions on the opposing party." *Morgan*, 142 S. Ct. at 1713. Furthermore, Defendant's suggestion that the "strong federal policy favoring enforcement of arbitration agreements" changes the waiver analysis (*see* Dkt. No. 28 at 14:22-26) was flatly rejected by the Supreme Court:

> [T]he FAA's "policy favoring arbitration" **does not authorize federal courts to invent special, arbitration-preferring procedural rules**. Our frequent use of that phrase connotes something different. Th[e] policy, we have explained, is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts. Or in another formulation: The policy is to make arbitration agreements as enforceable as other contracts, but not more so. Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. **But a court may not devise novel rules to favor arbitration over litigation. If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.**
>
> And indeed, the text of the FAA makes clear that courts are not to create arbitration-specific procedural rules like the one we address here. Section 6 of the FAA provides that any application under the statute—including an

1

application to stay litigation or compel arbitration—"shall be made and heard in the manner provided by law for the making and hearing of motions" (unless the statute says otherwise). A directive to a federal court to treat arbitration applications "in the manner provided by law" for all other motions is simply a command to apply the usual federal procedural rules, including any rules relating to a motion's timeliness. Or put conversely, it is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration. As explained above, th**e usual federal rule of waiver does not include a prejudice requirement. So [s]ection 6 instructs that prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA**.

*Id.* at 1713–14 (quotation marks and citations omitted) (emphasis supplied).

What matters, then, is simply whether "a party, by litigating too long, [has] waived its right to stay litigation or compel arbitration under the FAA." *Morgan*, 142 S. Ct. at 1714. In light of the *Morgan* decision, the Ninth Circuit has restated the general rule of waiver of a contractual right and that "the test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Bus. Servs, LLC*, 59 F. 4th 457, 468 (9th Cir. 2023).

In *Morgan*, the defendant did not initially move to compel arbitration or stay the case, but instead, over a period of eight months, filed a motion to dismiss, filed an answer, and engaged in mediation, before finally moving to compel arbitration. The plaintiff in *Morgan* argued that since the defendants initially defended the lawsuit as if no arbitration agreement existed, that its litigation conduct was inconsistent with an intention to compel arbitration in a manner that served to waive the defendants' ability to do so. In denying the defendants' motion to stay the litigation and compel arbitration under the FAA the *Morgan* court held that, "Stripped of its prejudice requirement, the Eighth Circuit's current waiver inquiry would focus on Sundance's conduct. Did Sundance knowingly relinquish the right to arbitrate by acting inconsistently with that right?" *Morgan*, 142 S. Ct. at 1709.

Here, it is not a close call on whether Defendant waived its right to compel the arbitration of Plaintiff's claims. As to the first element, Defendant clearly knew of its right to arbitrate, having referenced the arbitration agreement (albeit in boilerplate language) in its Answer (Dkt.

1  No. 4), as one of 73 affirmative defenses in the second answer (Dkt. No. 11), and in its Summary
2  Judgment Motion (Dkt. No. 15). Therefore, since at least the beginning of the litigation,
3  Defendant undisputedly knew of its right to compel arbitration, yet chose not to do so.

4    As to the second element, courts have evaluated whether a party acted inconsistently with
5  its right to arbitrate by considering "the totality of the parties' actions,' and ask 'whether a
6  party's actions indicate a conscious decision to seek judicial judgment on the merits of the
7  arbitrable claims, which would be inconsistent with a right to arbitrate." *Newirth by & through*
8  *Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 941 (9th Cir. 2019). While "[t]here is
9  no concrete test to determine whether a party has engaged in acts that are inconsistent with its
10 right to arbitrate … a party's extended silence and delay in moving for arbitration may indicate a
11 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable
12 claims', which would be inconsistent with a right to arbitrate." *Martin v. Yasuda*, 829 F. 3d 1118,
13 1125 (9th Cir. 2016) (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F. 3d 54, 759 (9th
14 Cir. 1988)). Additionally, this second element is satisfied "when a party chooses to delay his
15 right to compel arbitration by actively litigating his case to take advantage of being in federal
16 court." *Id*. "A statement by a party that it has a right to arbitration in pleadings or motions is not
17 enough to defeat a claim of waiver," because "[a] party cannot keep its right to demand
18 arbitration in reserve indefinitely while it pursues a decision on the merits before the district
19 court." *Id*.

20   Reviewing the history of this litigation, which is discussed in further detail in Plaintiff's
21 Opposition, can only lead to the conclusion that Defendant engaged in litigation that is
22 inconsistent with its right to arbitrate. Plaintiff filed a class action complaint in the Tulare County
23 Superior Court against Defendant in November 2020, which Defendant removed in January 2021
24 and filed its Answer that same month. (Dkt. Nos. 1, 4). In February 2021, Plaintiff filed a PAGA
25 complaint against Defendant in the Tulare County Superior Court, which Defendant removed in
26 March 2021 and then filed its Motion to Dismiss that same month. (Case No. 1:21-CV-00467-
27 NON-SAB ("PAGA Case"), Dkt. Nos. 1, 4). Defendant then requested, and Plaintiff agreed, to

28

3
PLAINTIFF/CROSS-DEFENDANT FILEMON COLORES' SUPPLEMENTAL BRIEF RE: RECENT
AUTHORITY IN SUPPORT OF HIS OPPOSITION TO DEFENDANT/CROSS-COMPLAINANT
RAY MOLES FARMS, INC.'S PETITION TO COMPEL ARBITRATION

1  stipulate to consolidate the PAGA Case with the instant class action, which the Court granted in
2  April 2021. (Dkt. No. 10). In May 2021, Defendant filed another answer to the consolidated
3  complaints. (Dkt. No. 11). In May 2021, Defendant also filed its Cross Complaint (Dkt. No. 12)
4  and its Summary Judgment Motion (Dkt. No. 15). Around this time, the Parties also agreed to
5  attend mediation with the Honorable Judge Howard Broadman (Ret.), which was held in
6  November 2021. Inexplicably and inexcusably, Defendant waited until September 2021 to
7  directly communicate to Plaintiff the existence of a purported arbitration agreement and only
8  then provided a copy of the agreement to Plaintiff's Counsel. (Brown Decl., ¶24; Exh. M).
9  Defendant then filed the instant motion to compel arbitration in October 2021, nine months after
10 removing and actively litigating the matters.

11 Since *Morgan*, courts in similar circumstances have found the that both elements of
12 waiver have been met when placing the focus on defendant's actions. *See Freitas v. Cricket*
13 *Wireless, LLC*, No. C 19-07270 WHA, 2022 WL 3018061 (N.D. Cal. July 29, 2022) (finding
14 elements of waiver met because defendant filed two motions to dismiss against plaintiff on key
15 merits issues); *Gile v. Dolgen California, LLC*, No. 21-56311, 2022 WL 17248087 (9th Cir.
16 Nov. 28, 2022) (finding defendant waived its right and acted inconsistently with its intent to
17 arbitrate when it waited over eleven months to file a motion to compel arbitration after removing
18 the case to federal court); *Davis v. Shiekh Shoes, LLC*, 84 Cal.App.5th 956, 968 (2022) (finding
19 defendant waived arbitration even though it "presumably was aware of its right to arbitrate when
20 it asserted the parties' arbitration agreement as an affirmative defense in its answer" because of
21 its "extended period of unjustified silence"); *McBurnie v. Acceptance Now, LLC*, No. 3:21-CV-
22 01429-JD, 2022 WL 17342195 (N.D. Cal. Nov. 30, 2022) (finding waiver because "this is not a
23 situation in which a defendant did the bare minimum in court while pressing a prompt demand
24 for arbitration").

25 Another recent authority regarding the issue of waiver of the right to arbitrate that further
26 confirms that Defendant's conduct exemplifies a waiver of the right to arbitrate is *Ludlow v.*
27 *Flowers Foods, Inc.*, No. 18CV01190-JO-JLB, 2022 WL 1787094 (S.D. Cal. June 1, 2022).
28

1  Specifically, the *Ludlow* court stated the defendants' conduct in continuing to litigate in court despite their apparent communication to plaintiffs' counsel that they intended to compel arbitration operated as a waiver of the right to do so, stating "[T]he Court rejects this argument on the grounds that such statements reserving their arbitration right while still actively litigating in federal court—that is, hedging their bets in both forums—are not sufficient to defeat waiver." *Id.*, at *5. Furthermore, the *Ludlow* court, relying on the prior holding in *Martin* whereby the defendant was held to have waived its arbitration right because it continued to litigate, despite pleading arbitration as an affirmative defense and maintaining that each plaintiff executed an arbitration agreement in its joint status reports, stated that, "[S]imilarly, here, Defendants' statements to opposing counsel that they intended to seek arbitration do not circumvent waiver because they continued to engage in litigation conduct…to their advantage." Further, the *Ludlow* court opined, "[t]he totality of Defendants' actions is inconsistent with exercising their right to arbitrate. The Arbitration Agreements have, therefore, been waived." *Id*. In *Ludlow*, the defendant actively litigated a wage and hour class action in a manner inconsistent with an intent to compel arbitration, notwithstanding some vague references to arbitration in its answer, before finally moving to compel arbitration months after the plaintiff initially filed the lawsuit.

Here, for almost twelve months since the onset of litigation, even though it was well aware of the existence of the arbitration agreement at issue, Defendant remained virtually silent on the issue of arbitration. Only after it had actively litigated the cases, by removing both matters to Federal court, filing multiple answers, filing a motion to dismiss, filing a Cross Complaint, filing a Summary Judgment Motion, and agreeing to and scheduling a private mediation, did Defendant then make a much-delayed demand for arbitration. Therefore, the aforementioned recent authority, coupled with the facts present in this matter, clearly demonstrate that Defendant waived its right to compel arbitration.

**II.    *VIKING RIVER* DOES NOT APPLY BECAUSE THE AGREEMENT DOES NOT CONTAIN A PAGA WAIVER, AND EVEN ASSUMING *VIKING RIVER* APPLIES, PLAINTIFF'S PAGA CLAIMS CANNOT BE COMPELLED TO ARBITRATION BECAUSE THE AGREEMENT CONATINS A WHOLESALE PAGA WAIVER AND LACKS A SEVERABILITY CLAUSE**

Plaintiff anticipates that Defendant will submit *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022) (hereinafter "*Viking Cruises*") as recent authority that supports its petition to compel arbitration. While the impact that *Viking River* will have on cases under PAGA will no doubt arise in many cases, this case is not one of them. *Viking River* is not outcome-determinative in this case. Unlike the arbitration agreement in *Viking River*, the one signed by Plaintiff is completely silent as to PAGA claims and does not even contain a PAGA waiver. Here, the arbitration agreement at issue states "Any and all past, present and future disputes between you (the Employee), and the Employer…shall be solely and exclusively resolved by final and binding arbitration on an individual basis…Class action lawsuits, and class action arbitrations, and any combining of individual proceedings…are waived and shall not be allowed." (Dkt. 21-4, Exh. B). Notably, there is no mention of "PAGA," "representative," or "collective" actions. *Viking River*, on the other hand, is all about the enforceability of PAGA waivers. Thus, the *Viking River* ruling has no effect here as there is no PAGA waiver at issue.

In *Viking River*, the at-issue arbitration agreement included a PAGA-action waiver. *Viking River*, 142 S. Ct. at 1916. The agreement also included a severability clause specifying not only that, "if the waiver was found invalid, any . . . PAGA action would presumptively be litigated in court," but also that "'any' portion of the waiver [that] remained valid . . . would be 'enforced in arbitration.'" *Id*. The PAGA waiver, the Court explained, was plainly invalid under the California Supreme Court's decision in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014). As explained in *Viking River*, *Iskanian* "held that **pre-dispute agreements to waive the right to bring 'representative' PAGA claims are invalid as a matter of public policy**." *Id.* (emphasis added). According to the Supreme Court, that aspect of *Iskanian* remains good law. *See Viking River*, 142 S. Ct. at 1924–25 ("The agreement between Viking and Moriana purported to waive 'representative' PAGA claims. Under *Iskanian*, this provision was invalid if construed as a wholesale waiver of PAGA claims. And under our holding, that aspect of *Iskanian* is not preempted by the FAA [i.e., the Federal Arbitration Act], so the agreement remains invalid insofar as it is interpreted in that manner."). *See also MacCelland v. Cellco*

*Partnership*, 609 F.Supp.3d 1024, 1038 (N.D. Cal. July 1, 2022) ("Importantly, *Viking River* found that the FAA does ***not*** preempt a rule of California law prohibiting wholesale waivers of the right to assert representative claims under PAGA") (emphasis in original). In other words, both *Iskanian* and *Viking River* hold that an agreement that can be construed as a wholesale waiver of PAGA claims is invalid.

In applying the holding to the particular arbitration agreement at issue, the *Viking River* Court was forced to reckon with the agreement's severability clause. Again, that clause "provide[d] that if the [PAGA] waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be 'enforced in arbitration.'" *Id*. According to the Supreme Court, the solution was to "divi[de]" the plaintiff's PAGA claim "into individual and non-individual claims"—i.e., to divide the PAGA claim into the named plaintiff's component, on the one hand, and a representative component consisting of all the other aggrieved employees, on the other hand—and to require the named plaintiff to arbitrate his individual component:

> We hold that the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate. This holding compels reversal in this case. The agreement between Viking and Moriana purported to waive "representative" PAGA claims. Under *Iskanian*, this provision was invalid if construed as a wholesale waiver of PAGA claims. And under our holding, that aspect of *Iskanian* is not preempted by the FAA, so the agreement remains invalid insofar as it is interpreted in that manner. ***But the severability clause in the agreement provides that if the waiver provision is invalid in some respect, any "portion" of the waiver that remains valid must still be "enforced in arbitration."*** Based on this clause, Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim. The lower courts refused to do so based on the rule that PAGA actions cannot be divided into individual and non-individual claims. Under our holding, that rule is preempted, so Viking is entitled to compel arbitration of Moriana's individual claim.

*Viking River*, 142 S. Ct. at 1924–25.

As mentioned above, the decision in *Viking River* is inapplicable here because there is no PAGA waiver. However, even if a liberal reading of the arbitration agreement could interpret the inclusion of a PAGA waiver, it would be a wholesale one that plainly violates *Iskanian*'s

"principal rule" and is still unenforceable and invalid under *Viking River*. Under *Viking River*, the severability clause would then kick in for further interpretation. Here, there is undisputedly no severability clause in the agreement signed by Plaintiff; there is nothing in the agreement that requires a "portion" of the PAGA waiver to be salvaged. Put differently, because a severability clause does not exist here, the wholesale PAGA waiver is deemed unenforceable as written and the PAGA claim must be litigated outside of arbitration. Accordingly, the agreement's unambiguous lack of a PAGA waiver and a severability clause requires that Plaintiff's PAGA claim remain in this Court.

### III. TO THE EXTENT THAT THE COURT IS INCLINED TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM, THE COURT SHOULD DECLINE TO DISMISS THE REPRESENTATIVE COMPONENT OF PLAINTIFF'S PAGA CLAIM

In the event that the Court compels the "individual" dimension of Plaintiff's PAGA claim to arbitration, then the "non-individual" component of that claim should be stayed, not dismissed. In *Viking River*, the Supreme Court stated that, based on its understanding of **state law**, PAGA did not provide a mechanism for courts to adjudicate a non-individual PAGA claim once an individual claim had been compelled to arbitration. *See Viking River*, 142 S. Ct. at 1925. However, as articulated in Justice Sotomayor's concurring opinion, "[i]f this Court's understanding of state law is wrong, **California courts . . . will have the last word**." *Id*. at 1925 (Sotomayor, J., concurring) (emphasis supplied). *See also id.* at 1926 (Barrett, J., concurring) (explaining that the majority's discussion concerning what to do with the representative component of the plaintiff's PAGA claim was "unnecessary to the result" and "address[ed] disputed state-law questions as well as arguments not pressed or passed upon in this case").

Indeed, shortly after *Viking River* was decided, the California Supreme Court granted review in *Adolph v. Uber Technologies, Inc.*, No. G059860, 2022 WL 1073583 (Cal. Ct. App. Apr. 11, 2022), review granted (July 20, 2022), in order to decide whether a PAGA plaintiff has statutory standing to proceed on behalf of others once the "individual" portion of his or her PAGA claim is compelled to arbitration. Should the California Supreme Court in *Adolph* find

that a plaintiff retains PAGA standing despite *Viking River*'s holding, the representative claims cannot be dismissed.

The California Supreme Court, in fact, has strongly suggested that representative claims may be pursued even when individual claims have been disposed of. In *Kim v. Reins International California, Inc.*, 9 Cal. 5th 73 (2020), the Court noted that statutory standing in California "rests on the [statute's] language, its underlying purpose, and the legislative intent." *Id.* at 83. The Court went on to explain that "[t]he plain language of section 2699(c)" requires "only" that the plaintiff "be an aggrieved employee, that is, someone 'who was employed by the alleged violator' and 'against whom one or more of the alleged violations was committed.'" *Id*. at 83–84 (citing Cal. Lab. Code § 2699(c)) (emphasis supplied). Although *Kim* was briefly cited in *Viking River*'s two-paragraph-long discussion of standing, it was not discussed substantively. *See Viking River*, 142 S. Ct. at 1924–25. Furthermore, although the *Kim* citation in *Viking River* is to a quote that "'PAGA's standing requirement was meant to be a departure from the "general public" . . . standing originally allowed' under other California statutes," *id.* at 1925 (quoting *Kim*) (ellipsis in original), **the very next sentence** in *Kim* states that "[n]othing in the legislative history suggests the Legislature intended to make PAGA standing dependent on the existence of an unredressed injury, or the maintenance of a separate, unresolved claim." *Kim*, 9 Cal. 5th at 90–91. Plaintiff therefore submits that, if the Court compels the individual component of Plaintiff's PAGA claim to arbitration, it should stay the litigation of the non-individual component of that claim pending the decision in *Adolph*.

Further, in *California Labor and Workforce Development Agency v. CompuCom Systems, Inc.*, No. 2:21-cv-02327-KJM-KJN, 2023 WL 2466236 (E.D. Cal. March 10, 2023), Hon. Judge Kimberly J. Mueller, relying on recent California decisions, declined to dismiss the non-individual PAGA claim and ordered a stay, reasoning:

> [T]he best course in this case is to stay the non-individual PAGA claim pending a decision in *Adolph*, finding particularly persuasive the decision of a sister court in *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, __ F.Supp.3d __, 2022 WL 10585178, at *12 (N.D. Cal. 2022), which stayed that action pending a decision in *Adolph* while noting Justice Sotomayor's Viking River concurrence counsels in favor of a stay."

*Id.*, at *6. This is in line with other federal courts who have chosen to stay PAGA cases pending *Adolph*. *See Valencia v. Mattress Firm, Inc.*, No. C 22-06875 WHA, 2023 WL 2062951 (N.D. Cal. Feb. 16, 2023) (granting a stay "pending further legal developments on the viability of the representative portion of plaintiff's PAGA claim").

Lastly, further demonstrating the need to stay Plaintiff's PAGA claim, two recently published California appellate court decisions (the first precedential rulings since *Viking River*) found that non-individual PAGA claims can remain in court even after individual PAGA claims are compelled to arbitration. *See Piplack v. In-N-Out Burgers*, No. G061098, 2023 WL 2384502 (Cal. Ct. App. Mar. 7, 2023) (holding a PAGA plaintiff who is compelled to arbitrate individual claims under *Viking River* nonetheless retains standing under *Kim* to prosecute representative PAGA claims on behalf of the state); *Galarsa v. Dolgen*, No. F082404, 2023 WL 2212196 (Cal. Ct. App. Feb. 2, 2023) (holding that "a plaintiff's PAGA standing does not evaporate when an employer chooses to enforce an arbitration agreement.").

## IV. CONCLUSION

For the reasons set forth above, and in his Opposition, Plaintiff respectfully requests this Court deny Defendant's petition to compel arbitration. In the alternative, if the Court finds that Defendant has not waived its right to arbitration, and further concludes that the arbitration agreement includes a PAGA waiver that should be divided into individual and non-individual components despite the agreement's lack of a PAGA waiver and severability clause, then the Court should stay litigation of the non-individual component of Plaintiff's PAGA claim pending a decision in *Adolph*.

Dated: March 17, 2023                    STANSBURY BROWN LAW, PC

By:      */s/ Daniel J. Brown*
Daniel J. Brown
Ethan C. Surls
Attorneys for Plaintiff and Cross-Defendant
Filemon Colores