UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FILEMON COLORES, as an individual and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>  v.<br><br>RAY MOLES FARMS, INC., a California Corporation; and DOES 1 through 100,<br><br>          Defendant.<br><br>RAY MOLES FARMS, INC., a California Corporation,<br><br>          Cross-Complainant,<br><br>  v.<br><br>FILEMON COLORES, as an individual on behalf of all others similarly situated,<br><br>          Cross-Defendants. | Case No. 1:21cv-00101-JLT-BAM<br>(Consolidated with 1:21-cv-00467-JLT-BAM)<br><br><u>ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISSING PLAINTIFF'S FIRST SEVEN CAUSES OF ACTION WITHOUT PREJUDICE; DENYING PLAINTIFF'S MOTION TO STRIKE; AND STAYING REMAINING MOTIONS</u><br><br>(Docs. 15, 21, 35, 38, 44) |

      Filemon Colores brings suit on behalf of himself and similarly situated individuals alleging that Ray Moles Farms, Inc. ("Ray Moles") engaged in several violations of the California Labor Code and Business and Professional Code. (Doc. 1 at 12–29). Ray Moles contends that Colores's individual claims must be arbitrated. (Doc. 21-1 at 8–18.) Colores

1

counters that Ray Moles has waived its right to arbitrate. (Doc. 25.) For the reasons below, Defendant Ray Moles's Motion to Compel Arbitration is **GRANTED IN PART**. The claims compelled to arbitration are **DISMISSED WITHOUT PREJUDICE**. The claims not compelled to arbitration, as well as all pending motions regarding those claims, will be **STAYED** pending the California Supreme Court's decision in *Adolph v. Uber Technologies, Inc.*, No. G059860, 2022 WL 1073583 (Cal. Ct. App., Apr. 11, 2022), review granted (Cal. July 20, 2022).

## BACKGROUND

Filemon Colores was a non-exempt farm labor employee who worked for Ray Moles on a seasonal basis from approximately January 2016 to February 2, 2020. Ray Moles employed workers like Colores to harvest agricultural commodities in the state of California, including Tulare County. (Doc. 1 at 13–14, ¶¶ 3–4.) During different time periods, Colores was paid either hourly or on a piece rate basis for his work at Ray Moles vineyards. (Doc. 1 at 15, ¶ 9.)

Colores originally filed this suit as a class action in November 2020 in the Tulare County Superior Court, alleging violations of California's Labor Code and Unfair Competition Law. (Doc. 1 at 12–29.) According to Colores, Ray Moles failed to: (1) comply with minimum wage requirements; (2) pay overtime wages; (3) provide proper meal periods; (4) provide proper rest periods; (5) provide compliant itemized wage statements; (6) pay wages due at termination; and (7) comply with California's Unfair Competition Law. (*Id.*) Ray Moles removed the action to this Court on January 25, 2021 on the basis of the Class Action Fairness Act and immediately filed an answer. (Doc. 1 at 2; Doc 4.) These first seven claims constitute Colores's "non-PAGA" claims.

Colores later filed a related claim ("the PAGA claim") against Ray Moles under the California Private Attorneys General Act ("PAGA"), California Labor Code §§ 2698, et seq., which Ray Moles removed to this Court and consolidated with the present case. (Doc. 10; *see also Colores v. Ray Moles Farms, Inc.*, No. 1:21-cv-467-NONE-SAB at Doc. 1.) In May 2021, Ray Moles filed: an answer to the consolidated claims; a counterclaim for injunctive and declaratory relief on the grounds that PAGA violates both the California and federal

Constitutions (Docs. 12, 13); and a Motion for Judgment on the Pleadings or, in the alternative, Partial Summary Judgment, which argued for dismissal of all Colores's claims with prejudice for failure to state a claim upon which relief could be granted.  (*See* Doc. 15-1.)

The parties then agreed to attend mediation on November 2, 2021.  Colores propounded "informal mediation requests" which asked for employees' timekeeping and payroll data, as well as wage and hour policies, employee handbooks, and Colores's own personnel file.  (Doc. 25-1 at 31, Ex. J.).  Colores alleges that, despite the upcoming mediation, Ray Moles did not respond to any communications from May 2021 through August 2021.  (Doc. 25-1 at ¶ 23.)

Colores alleges that Ray Moles did not bring the arbitration agreement (the "Agreement") to his attention until September 27, 2021.  (Doc. 25-1 at ¶ 24.)  As early as September 30, 2021, Colores claims that Ray Moles indicated a forthcoming motion to compel if Colores "did not agree by October 5, 2021 to stipulate to arbitrate his claims." (Doc. 25-1 at ¶ 24.)  And, indeed, Ray Moles moved to compel arbitration on October 6, 2021.  (Doc. 21.)   The motion to compel included a copy of the Agreement that Colores signed when he was first hired by Ray Moles, dated December 5, 2016.  (Doc. 21-2.)  The Agreement provides that:

> Any and all past, present and future disputes between you (the Employee) and the Employer (and/or its agents, supervisors, officers and owners) [including but not limited to disputes about your job application process, your employment, and your compensation, and all disputes related to, resulting from, or arising out of the employment relationship] shall be solely and exclusively resolved by final and arbitration on an individual basis before a neutral retired judge, conducted under the provisions of the Federal Arbitration Act in Fresno, California. Class action lawsuits, and class action arbitrations, and any combining of individual proceedings, without the written consent of all the parties, are waived and shall not be allowed.

(Doc. 21-2 at 2.)

Based on the Agreement, Ray Moles seeks to compel arbitration of all of Colores's non-PAGA claims (causes of action 1-7), as well as the individual portion of Colores's PAGA claim.  Colores opposed the motion to compel on November 2, 2021, arguing Ray Moles waived its right to arbitration by "engaging in almost 12 months of active and prolonged litigation."  (Doc.

3

25 at 9.) Ray Moles filed its Reply on November 9, 2021. (Doc. 28.)[1] Both parties submitted supplemental briefing in March 2023 at the Court's request. (Docs. 60, 61, 62.)

After the motion to compel was filed, the Court received several motions related to Ray Moles's counterclaim challenging the constitutionality of PAGA. Specifically, Colores filed a motion to dismiss Ray Moles's counterclaim, (Doc. 35), and the California Attorney General requested leave to intervene in defense of PAGA. (Doc. 44.)  These motions, still pending, are addressed by this Order.

## LEGAL STANDARDS

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4. In deciding a motion to compel arbitration, the court is "limited to determining (1) whether a valid agreement to arbitrate exists [within the contract] and, if it does, (2) whether the agreement encompasses the dispute at issue." *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1017 (9th Cir. 2016) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (brackets in original)).

Because there is an "emphatic federal policy in favor of arbitral dispute resolution," *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985), "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)). The federal policy in favor of arbitration is "about treating arbitration contracts like all other[ contracts]"; "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). As such, the right

---

[1] Colores requests that the Court strike Ray Moles's Reply on the basis that it is over the permitted length and included "new" information about whether Ray Moles met and conferred with Colores before filing the motion to compel. Because the Court's analysis and decision on the motion to compel do not rely on the allegedly "new" information, the motion to strike is **DENIED** as **MOOT**.

4

to arbitration, like other contractual rights, can be waived.  Courts apply ordinary state-law principles governing contracts to determine whether to invalidate or enforce an arbitration agreement.  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

**ANALYSIS**

Ray Moles contends that the Court must compel arbitration because Colores agreed, in a binding and enforceable arbitration agreement, to arbitrate his individual claims and waive the right to bring a class claim.  (Doc. 21 at 12.)  By its terms, the Agreement covers "any and all" disputes between employee and employer, including "disputes about . . . compensation, and all disputes related to, resulting from, or arising out of the employment relationship".  (Doc. 21-2 at 2.)  Colores does not dispute that he signed the Agreement.  However, the parties disagree as to (1) whether Ray Moles waived its right to arbitration in this suit by acting inconsistently with that right and, if Ray Moles has not waived arbitration rights, (2) the extent to which Colores's claims—especially his PAGA claims—can be compelled to arbitration.  Because the issue of waiver would be determinative, the Court addresses it first.

**A.     Waiver**

Colores argues that although he signed an arbitration agreement which may apply to his claims, Ray Moles waived its right to arbitrate by engaging in behavior inconsistent with that right. (Doc. 25.)   Previously, parties in the Ninth Circuit arguing that their opponent waived the right to arbitrate bore "the heavy burden of demonstrating" that their opponent "(1) [had] knowledge of an existing right to compel arbitration"; committed "(2) intentional acts inconsistent with that existing right; and (3) [caused] prejudice to the person opposing arbitration from such inconsistent acts."  *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457 (9th Cir. 2023) (citing *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 939 (9th Cir. 2019).  The Supreme Court eliminated the prejudice requirement in *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708 (2022), leaving the "knowledge" and "inconsistent acts" requirements in place. *Morgan* also lessened the burden on the party asserting waiver; it is no longer "heavy". *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014–15 (9th Cir. 2023).  Therefore, to

demonstrate waiver, Colores now bears the ordinary burden of showing only that Ray Moles (1) had knowledge of the right to arbitrate and (2) intentionally acted inconsistently with that right. The Ninth Circuit's "body of caselaw . . . applying these two elements remains good law following *Morgan*". *Hill*, 59 F.4th at 460.

Ray Moles does not contest that it had knowledge of its right to compel arbitration, so the remaining issue is whether Ray Moles waived its right to arbitration by engaging in litigation conduct that is inconsistent with such a right. "Under California law, factors that may be considered to determine whether arbitration has been waived include: whether "the litigation machinery has been substantially invoked"; whether the parties were "well into the preparation of a lawsuit" before the applicable party served notice of intent to arbitrate; whether arbitration was sought close to the trial date or otherwise delayed for a long period; and whether important "intervening steps," such as taking advantage of judicial discovery procedures not available in arbitration, took place before the intent to compel arbitration was made clear. *St. Agnes Med. Center v. PacifiCare of California*, 31 Cal.4th 1187, 1196 (2003); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 (9th Cir. 2008).

When evaluating waiver, courts in this circuit generally consider "the totality of the parties' actions," and ask, "whether a party's actions indicate a conscious decision to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate." *Newirth*, 931 F.3d at 941 (9th Cir. 2019) (cleaned up) (abrogated on other grounds). "A party's extended silence and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims.'" *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)). Additionally, the "inconsistent acts" element is satisfied "when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Martin*, 829 F.3d at 1125. Taking strategic advantage of being in court includes actions such as conducting discovery and seeking a judicial judgment on the merits of an issue. *Martin*, 829 F.3d at 1125.

Colores argues that Ray Moles waived its right to arbitrate by removing this suit to

federal court, filing motions to dismiss that seek rulings on the merits of Colores's claims, stipulating to the continuation of Mandatory Scheduling Conferences, filing a counterclaim, and agreeing to mediation on a class basis.  (Doc. 25 at 2–3.)  Colores further complains that Ray Moles took most of these actions before informing Colores, on September 27, 2021, about the existence of the Agreement.  (Doc 25 at 3.)  Ray Moles counters that it raised arbitration as a defense to Colores's claims in its Answers.  (Doc. 28 at 5, *see also* Doc. 4 at 6, ¶ 20.)  Ray Moles also claims that it provided and discussed the Agreement with Colores in communications throughout the litigation.

Colores is correct that Ray Moles's mere mention of arbitration in its Answers is "not enough to defeat a claim of waiver."  *Martin*, 829 F.3d at 1125 ("A statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver.").  Colores is also correct that Ray Moles sought a decision on the merits of this action in its motion to dismiss (Doc. 15), an action which may be inconsistent with the right to arbitrate.  *Martin*, 829 F.3d at 1125.  However, even without a "heavy" burden, Colores fails to demonstrate that Ray Moles waived its right to arbitrate under the totality of the circumstances.

Colores points the Court to no case with truly comparable facts.  Instead, he relies on cases where the party seeking arbitration had either *received* a decision on the merits, participated in discovery before filing their motion to compel, or otherwise evinced a clear intent to proceed with the litigation.  *See, e.g., Gile v. Dolgen California, LLC*, No. 5:20-CV-01863-MCS-SP, 2021 WL 5830041 (C.D. Cal. Nov. 15, 2021), *aff'd,* No. 21-56311, 2022 WL 17248087 (9th Cir. Nov. 28, 2022) (finding waiver where defendant sought arbitration after winning a motion to dismiss on the merits); *Hill,* 59 F.4th at 474 (defendant propounded discovery before revealing an arbitration agreement); *Davis v. Shiekh Shoes, LLC*, 84 Cal.App.5th 956, 968 (2022) (defendant waited 17 months to compel arbitration after setting and delaying a trial date); *McBurnie v. Acceptance Now, LLC*, No. 3:21-CV-01429-JD, 2022 WL 17342195 (N.D. Cal. Nov. 30, 2022) (defendant actively engaged in discovery, participated in settlement discussions, and extended case deadlines "each time representing that they were actively working to move the litigation forward."); *Hoover v. Am. Income Life Ins. Co.*, 206

1    Cal.App. 4th 1193, 1205 (2012) (defendant "availed itself of discovery mechanisms like

2    depositions not available in arbitration"); *Sobremonte v. Superior Ct. (Bank of Am. Nat. Tr. &*

3    *Sav. Ass'n)*, 61 Cal. App. 4th 980, 980, *as modified* (Feb. 26, 1998) (defendant participated in

4    five trial court hearings, including two status conferences, and extensive discovery).  In fact,

5    even where the party seeking arbitration has filed a motion to dismiss on the merits, the Ninth

6    Circuit has not found waiver without prolonged delays and "significant additional litigation

7    activity."  *United Specialty Ins. Co. v. Clean & Sober Media LLC*, No. 2:20-CV-02765-RGK-

8    KS, 2021 WL 3623300, at *2 (C.D. Cal. Apr. 16, 2021) (discussing cases).

9         Courts have held that parties may participate in litigation without waiving their arbitral

10   rights if their purpose in participation is to "avoid or frustrate the litigation rather than a strategic

11   decision to actively litigate [and] forgo the right to compel arbitration."  *Newirth*, 931 F.3d at

12   941–42 (abrogated on other grounds) (internal citations omitted); *Chartwell Staffing Servs. v.*

13   *Atl. Sols. Grp., Inc.*, 2020 WL 620294, at *9 (C.D. Cal. Jan. 9, 2020).  In *Hansber*, for example,

14   the court declined to find waiver where a defendant removed the case to federal court, filed a

15   motion to dismiss (which was granted in part), filed an answer to an amended complaint,

16   responded to plaintiff's discovery requests, attempted to join other parties, and waited nearly two

17   years before filing a motion not compel.  *Hansber v. Ulta Beauty Cosms., LLC*, No.

18   121CV00022AWICDB, ––– F.Supp.3d ––––, ––––, 2022 WL 16836627, at *6 (E.D. Cal. Nov.

19   9, 2022).  Ray Moles's actions in this case are comparable to the *Hansber* defendant's; its

20   actions, while potentially dilatory, evince an intent to merely frustrate the litigation.  As such, the

21   Court finds that Ray Moles has not waived its right to arbitrate in this case.

22   **B.    Enforceability of the Agreement**

23        Having found that Ray Moles did not waive its right to arbitrate the issues in this case,

24   the Court now examines the validity of the Agreement and its applicability on Colores's claims.

25   "The basic role for courts under the FAA is to determine '(1) whether a valid agreement to

26   arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at

27   issue.'"  *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013).

28   ///

### 1. Non-PAGA Claims

Colores does not dispute that he signed the Agreement or that the Agreement encompasses his non-PAGA claims, the first seven causes of action in his complaint. As such, the Court **GRANTS** Ray Moles's motion to compel individual arbitration of Colores's non-PAGA claims. The non-PAGA claims are therefore **DISMISSED WITHOUT PREJUDICE**. *California Lab. & Workforce Dev. Agency ex rel. Raymond v. CompuCom Sys., Inc.*, No. 221CV02327KJMKJN, 2023 WL 2466236, at *1 (E.D. Cal. Mar. 10, 2023) (indicating that the court dismissed plaintiff's individual and putative class wage and hour claims after compelling arbitration as to the former).

### 2. PAGA Claims

As to Colores's PAGA claims in his eighth cause of action, there remains significant disagreement. Ray Moles does not dispute that the Agreement does not contain an explicit waiver of PAGA claims; however, Ray Moles argues that the Agreement encompasses some of Colores's PAGA claims, which should appropriately be split into "individual" arbitrable claims and "representative" non-arbitrable claims per the Supreme Court's decision in *Viking River Cruises v. Moriana*, ––– U.S. ––––, 142 S. Ct. 1906, 1923–26 (2022). (Doc. 21-1 at 18.)

The *Viking River* Court explained that PAGA actions are "representative" in two ways: (1) "in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State"; and that (2) "they are predicated on code violations sustained by other employees." 142 S. Ct. at 1916. The Court further explained that "when the word 'representative' is used in the second way, it makes sense to distinguish 'individual' PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff, from 'representative' (or perhaps quasi-representative) PAGA claims arising out of events involving other employees." *Id.*

Prior to *Viking River*, the California Supreme Court in *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 383–84 (2014), mandated that "categorical waivers of PAGA standing are contrary to state policy and that PAGA claims cannot be split into arbitrable individual claims and nonarbitrable 'representative' claims." *Viking River*, 142 S. Ct. at 1916. *Viking River*

1  overturned the latter half of this rule on the grounds that *Iskanian*'s holding was preempted by
2  the FAA "insofar as it precludes division of PAGA actions into individual and non-individual
3  claims through an agreement to arbitrate." *Viking River*, 142 S. Ct. at 1923–26. However,
4  *Viking River* left intact *Iskanian*'s holding that wholesale waivers of PAGA claims are invalid
5  because they would impermissibly include waiver of a plaintiff's ability to bring agent/proxy
6  representative claims. *Viking River*, 142 S. Ct. at 1924–25. "Thus, under *Viking River*, waivers
7  of the right to assert representative PAGA claims on the state's behalf remain barred, but
8  employees may waive the right to bring PAGA claims that are specifically premised on labor
9  code violations they have personally suffered." *Hansber*, 2022 WL 16836627, at *6 (E.D. Cal.
10 Nov. 9, 2022) (citing *Viking River*, 142 S. Ct. at 1923–26).

11  In supplemental briefing ordered by the Court as to *Viking River*'s impact on the pending
12 motion, (Doc. 60), Colores argues that the Agreement constitutes a "wholesale" waiver of all his
13 PAGA claims, though he cites no authority in support of his argument. The Supreme Court in
14 *Viking River* found a wholesale waiver in an arbitration agreement that prohibited the plaintiff
15 from bringing "any dispute as a class, collective, or representative action under PAGA." *Viking*
16 *River*, 142 S. Ct. at 1911. Similarly, in *Potts v. Sirius XM Radio Inc.*, the court found a
17 wholesale waiver in an arbitration agreement that did not specifically mention PAGA claims but
18 that otherwise prohibited "representative action[s]." No. CV 21-9755-DMG (KSX), 2022 WL
19 17098184, at *5 (C.D. Cal. Oct. 25, 2022).

20  Here, the Agreement does not make any reference to PAGA claims or "representative"
21 claims; it merely states that "all disputes related to, resulting from, or arising out of the
22 employment relationship[] shall be solely and exclusively resolved by final and binding
23 arbitration on an individual basis" and that "[c]lass action lawsuits, and class action arbitrations,
24 and any combining of individual proceedings, without the written consent of all the parties, are
25 waived and shall not be allowed." (Doc. 21-2 at 2.) It appears from this language that the
26 waiver seeks to limit only those PAGA claims predicated on code violations sustained by other
27 employees. *See Shams v. Revature LLC*, No. 22-CV-01745-NC, ––– F.Supp.3d –––, –––,
28 2022 WL 3453068, at *2 (N.D. Cal. Aug. 17, 2022) (finding no wholesale waiver even in an

10

arbitration agreement waiving "private attorney general actions" because "the context of where 'private attorney general' appears makes clear that the waiver applies to non-individual representative actions, not [the employees] individual PAGA claims on behalf of the State."); *see also Johnson v. Lowe's Home Centers, LLC*, No. 221CV00087TLNJDP, –– F.Supp.3d ––, –––, 2022 WL 4387796, at *3–4 (E.D. Cal. Sept. 22, 2022). Because the Agreement does not prohibit Colores from bringing agent/proxy claims on behalf of the State, it is not an impermissible "wholesale" PAGA waiver, and Colores's claims may be split into "individual" and "non-individual" or "representative" PAGA claims. The Court therefore concludes that Ray Moles is entitled to enforce the Agreement to the extent that it mandates arbitration of Colores's individual PAGA claim.

    As to Colores's remaining, non-individual PAGA claim, the question remains whether Colores's claim should be dismissed or stayed. The Supreme Court in *Viking River* dismissed such claims for lack of statutory standing after the plaintiff's individual PAGA claim was compelled to arbitration. 142 S. Ct. at 1925. District courts in California have taken different approaches to the question, with some staying proceedings as to the non-individual PAGA claims, others ordering dismissal per *Viking River*, *see Dominguez v. Sonesta Intl. Hotels Corp.*, 22-CV-03027-JCS, –– F.Supp.3d ––, –––, 2023 WL 25707, at *6–7 (N.D. Cal. Jan. 3, 2023) (discussing cases), and at least one court declining to follow *Viking River*'s standing analysis on the grounds that it is contrary to existing California law. *Shams*, 2022 WL 3453068, at *3. The Court finds the reasoning in *Dominguez* and *Martinez-Gonzalez*, as discussed in *Dhaliwal*, persuasive. *Dhaliwal v. Ace Hardware Corp.*, No. 222CV00446DADKJN, 2023 WL 2555471 (E.D. Cal. Mar. 17, 2023) (citing *Dominguez*, 2023 WL 25707, and *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, No. 18-CV-05226-EMC, –– F.Supp.3d ––, –––, 2022 WL 10585178 (N.D. Cal. Oct. 18, 2022).)

    As these courts emphasized, Justice Sotomayor's concurrence in *Viking River* recognizes that the issue of statutory standing under PAGA is subject to clarification under state law. *Viking River*, 142 S. Ct. at 1925. ("Thus, the Court reasons, based on available guidance from California courts, that [Plaintiff] lacks 'statutory standing' under PAGA to litigate her

1  'nonindividual' claims separately in state court. Of course, if this Court's understanding of state
2  law is wrong, California courts, in an appropriate case, will have the last word.").  Because of
3  Justice Sotomayor's qualification, the section of *Viking River* discussing standing obtained only
4  "four unqualified votes." *California Lab. & Workforce Dev. Agency*, 2023 WL 2466236, at *3.
5  And the California Supreme Court has taken up the issue of statutory standing in the pending
6  case *Adolph v. Uber Technologies, Inc.*, No. G059860, 2022 WL 1073583 (Cal. Ct. App., Apr.
7  11, 2022), review granted (Cal. July 20, 2022).

Accordingly, as several other courts have done, the Court will **STAY** Colores's representative PAGA claims—and all unresolved motions related to those claims—pending further legal developments.  *See George v. Manheim Invs., Inc.*, 731 F. App'x 624, 627 (9th Cir. 2018) (permitting the California district court to stay the case pending the resolution of a California Supreme Court decision that may inform the district court's reasoning on a threshold issue).

**ORDER**

For the reasons stated above, the Court **ORDERS**:

1. Ray Moles's Motion to Dismiss, (Doc. 15), is **STAYED**.
2. Ray Moles's Motion to Compel Arbitration, (Doc. 21), is **GRANTED IN PART** as to Colores's non-PAGA claims and as to his individual PAGA claims.  The motion is **DENIED** to the extent that it seeks compelled arbitration of Colores's representative PAGA claims.
3. Colores's non-PAGA claims, his first seven causes of action in the complaint, are **DISMISSED WITHOUT PREJUDICE**.
4. Colores's Motion to Dismiss Ray Moles's counterclaim challenging PAGA's constitutionality, (Doc. 35), is **STAYED**.
5. Colores's Motion to Strike Ray Moles's reply in support of its motion to compel, (Doc. 38), is **DENIED** as **MOOT**.
6. The California Attorney General's Motion to Intervene, (Doc. 44), is **STAYED**.
7. The parties **SHALL**, within **30 days** of the California Supreme Court's decision

in *Adolph*, file a status with the Court detailing their positions on any pending motions affected by *Adolph*, taking into consideration the California Supreme Court's decision. If necessary, the Court may order additional briefing at that time.

IT IS SO ORDERED.

Dated: **March 30, 2023**

UNITED STATES DISTRICT JUDGE

13